2020 IL App (1st) 181658-U

FOURTH DIVISION
December 3, 2020

No. 1-18-1658

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos.  09 CR 3319 |
| MAZEN JUBEH, | ) ) | 09 CR 3120 |
| Defendant-Appellant. | ) ) ) ) ) ) | Honorable William G. Lacy, Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the judgment of the circuit court of Cook County which denied defendant's second amended motion to withdraw his guilty pleas where his claims of ineffective assistance of counsel fail.

¶ 2    Defendant Mazen Jubeh appeals the order of the circuit court of Cook County denying

his second amended motion to withdraw his guilty pleas due to counsel's alleged ineffectiveness.

On appeal, defendant argues that the trial court erred in denying this motion because his pleas

were not knowing, intelligent, or voluntary. Specifically, defendant maintains that his motion demonstrated that his attorney was ineffective for 1) failing to disclose favorable fingerprint evidence, 2) failing to adequately investigate his claims that the complainants shot him while he was standing, unarmed, outside their apartment building, and 3) pressuring him to plead guilty during an anxiety attack. According to defendant, absent these actions by counsel, he would have rejected the plea offers and proceeded to trial. Based on the reasons which follow, we affirm the judgment of the trial court.

¶ 3                                    BACKGROUND

¶ 4      The facts surrounding defendant's guilty pleas are uncontested. On January 18, 2009, at approximately 8 or 9 p.m., Amanda Collier was at her home on the 4400 block of West Cortez in Chicago with her sister Angelica Rios, Walton Garcia, and her son. Defendant, wearing a mask and brandishing a handgun, forcibly entered Collier's apartment. Garcia shot defendant, who then fled the scene. Collier telephoned 911 and police responded to that location. Collier had known defendant for two years, but she did not give him permission or authority to enter her residence. Two firearms were found at the scene and tested for fingerprints. One suitable latent fingerprint was recovered from one of those weapons and did not match defendant's fingerprint. Defendant also had telephoned Collier on December 28, 2008, and January 28, 2009, and threatened her with future bodily harm on both occasions. On August 10, 2011, defendant returned to Collier's residence and pounded on her door.

¶ 5      Defendant was charged with two counts of home invasion, one count of armed violence, one count of residential burglary, and one count of stalking. On May 3, 2012, defendant pled guilty to one count of home invasion with a firearm and one count of stalking. The trial court found defendant's pleas to be knowing and voluntary. The trial court entered judgment on the

pleas and sentenced defendant to the minimum term of imprisonment of 21 years for the home invasion with a firearm, and to the minimum term of imprisonment of 1 year for the stalking, with the sentences to run consecutively.

¶ 6      Defendant subsequently filed a *pro se* motion to withdraw his guilty pleas and vacate his sentence.  He alleged that his trial counsel was "very inadequate" and the plea was involuntary and a result of "coercion."  Thereafter, defendant, through retained post plea counsel, filed an amended motion to withdraw his guilty pleas.  The amended motion alleged that defendant was coerced into pleading guilty by his trial attorney.  Specifically, defendant contended that "he was misled into thinking that he ha[d] no chance at trial and that he would get the maximum of 45 years at 85% if he went to trial."  He also alleged that he wanted his trial counsel to "hire an expert to examine the trajectory of his bullet wounds to show the vantage point of the shooter victim in this matter."  Additionally, defendant wanted his trial counsel "to have the firearm found at the scene, that is allegedly to be the Defendant's, examined for fingerprint [*sic*] of the victims."  All of these requests, however, "went unanswered."

¶ 7      As required by Illinois Supreme Court Rule 604(d) (eff. July 1, 2006), postplea counsel attached a certificate to the amended petition.  Postplea counsel's certificate did not state on its face that counsel examined the entire trial court file and report of proceedings of the plea of guilty.

¶ 8      On October 1, 2012, the State filed a response to defendant's motion, asserting that defendant's trial counsel "properly took into consideration all of the defendant's wishes for pretrial investigation, and only after their investigation was complete did they determine that all avenues had been exhausted."

¶ 9      On November 1, 2012, the trial court conducted a hearing on the amended motion to

withdraw the guilty pleas, at which time defense counsel clarified the motion only involved the home invasion charge. During the hearing, defendant testified it was his belief that if trial counsel conducted his requested investigations, the evidence would have demonstrated that he did not have a handgun with him, and that he was shot from the third floor while he stood outside. Defendant also testified that he only pled guilty because counsel claimed she had nothing to argue in his defense, and he would most likely be found guilty and be sentenced to 45 years' incarceration if he went to trial.

¶ 10    The State presented testimony from defendant's trial counsel, Rosa Silva, who denied defendant's allegations, maintained that she never forced defendant to plead guilty, and testified that he decided to plead guilty on his own accord. She also testified she advised defendant that, given the facts of his case, he would most likely be found guilty and that he would face a higher sentence than what he was being offered through the plea agreement. Counsel further testified that she had spoken with two doctors who informed her it would not be possible for them to establish the trajectory of the bullets that struck defendant. Specifically, counsel spoke with Dr. Sullivan, defendant's surgeon, who stated he would not be able to give an opinion because he did not determine the trajectory at the time of defendant's surgery and he would not be able to reconstruct the wounds to determine the trajectory. Dr. Orellana, defendant's emergency room physician, also stated he could not opine regarding the trajectory of the bullets. Silva additionally explained that she prefers not to have firearms checked for fingerprints as a matter of trial strategy.

¶ 11    The State also presented the testimony of Marcos Reyes, Silva's supervising attorney. Reyes testified he met with defendant on numerous occasions and they discussed trial strategy. According to Reyes he informed defendant that he had hired experts in the past to determine the

trajectory of bullets and that "we could try to look into that in this case." Reyes further testified that he and Silva looked into hiring an expert in bullet trajectories and also examined defendant's medical history to determine whether it was a feasible option, but ultimately decided it was not.

¶ 12    Following arguments from counsel, the trial court denied defendant's motion, finding "no basis in fact or law to be allowed to withdraw this guilty plea."

¶ 13    On November 30, 2012, defendant filed a timely notice of appeal to this court. We concluded that the record was unclear as to whether postplea counsel actually examined the entire record as required under Rule 604(d) because the certificate did not state on its face that counsel examined the entire trial court file and report of proceedings of the plea of guilty. Accordingly, because postplea counsel failed to strictly comply with Rule 604(d) we remanded the matter to the trial court for:  (1) the filing of a proper Rule 604(d) certificate; (2) the opportunity to file a new motion to withdraw the defendant's guilty plea and/or reconsider sentence, if counsel determines that a new motion is necessary; and (3) a new motion hearing. *People v. Jubeh*, 2015 IL App (1st) 130067-U, ¶ 26.

¶ 14    On remand, defendant, with the assistance of private counsel, filed a second amended motion to withdraw his guilty pleas. In the motion, he incorporated those claims presented in his amended motion to withdraw. He also requested the trial court consider additional evidence attached to his motion which included telephone records and Western Union records which defendant alleged demonstrated his theory of defense that Collier was extorting him and he was shot after "this pattern of extortion" was "coming to an end."

¶ 15    In response, the State incorporated its previous arguments on the motion to withdraw and maintained defendant's new exhibits did not entitle him to relief because they were only relevant to the stalking conviction and they lacked proper foundation or an accompanying affidavit to

establish their authenticity.

¶ 16    The trial court then conducted a hearing on defendant's second amended motion to withdraw his guilty pleas. Defendant did not offer any new testimony and requested the trial court incorporate the testimony previously presented. After considering the oral and written arguments on the second amended motion to withdraw, the prior pleadings and the initial motion to withdraw, as well as the transcript of the hearing on that particular motion held on May 3, 2012, the trial court denied the motion and indicated it was standing on its previous ruling. The trial court incorporated its original ruling on the amended motion to withdraw in denying the second amended motion to withdraw. This appeal followed.

¶ 17                              ANALYSIS

¶ 18    On appeal, defendant argues that the trial court erred in denying his second amended motion to withdraw his guilty pleas because his pleas were not knowing, intelligent, or voluntary. Specifically, defendant maintains that his motion to withdraw demonstrated that his attorney was ineffective for 1) failing to disclose the favorable fingerprint evidence, 2) failing to adequately investigate his claims that the complainants shot him while he was standing, unarmed, outside their apartment building, and 3) pressuring him to plead guilty during an anxiety attack. According to defendant, absent these actions by counsel, he would have rejected the plea offers and proceeded to trial.

¶ 19    Prior to addressing the merit of defendant's claims, we address the issue of forfeiture. For the first time on appeal, defendant argues that his counsel pressured him to plead guilty during an anxiety attack. As our supreme court recently observed, upon appeal any issue not raised by the defendant in a motion to withdraw the plea of guilty and vacate the judgment "shall" be deemed forfeited. *People v. Sophanavong*, 2020 IL 124337, ¶ 22. This is because the

failure to raise claims of error before the trial court denies the court the opportunity to correct the error immediately and grant a new trial if one is warranted, wasting time and judicial resources. *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009). Along with allowing the trial court to immediately correct any errors that may have led to the guilty plea, Rule 604(d) ensures that fact finding takes place and a record is made at a time when witnesses are still available and memories are fresh. *Sophanavong*, 2020 IL 124337, ¶ 23 (quoting *People v. Evans*, 174 Ill. 2d 320, 329 (1996)).

¶ 20 Here, defendant pled guilty in May 2012 and filed a motion to withdraw his guilty pleas. Defendant, however, did not raise the issue that counsel was ineffective "for pressuring him to plead guilty while he was in the midst of a mental breakdown" as he now alleges. Then, in August 2012, defendant was granted leave to file an amended motion to withdraw his guilty pleas. Again, he did not raise this issue. Upon remand from this court in June 2017, defendant filed a second amended motion to withdraw his guilty pleas with the assistance of private counsel. This motion also failed to assert this claim. Accordingly, the record demonstrates this claim was never raised in the trial court. See *id.* ¶ 24. Consequently, we find defendant forfeited this claim and we will not review it on appeal. See *id.* ¶ 25 ("If Rule 604(d)'s requirement that the issues be raised in a motion to withdraw the guilty plea or otherwise risk forfeiture is to have any force, defendant's failure to raise the issue within 30 days of the imposition of sentence must be found to be what it is—forfeited.").

¶ 21 We further find another of defendant's claims to be forfeited. Defendant contends for the first time on appeal that counsel was ineffective where she 1) failed to review all discovery materials, 2) failed to inform him that a police report contained evidence of a fingerprint from someone other than him on a firearm taken from the scene, and 3) failed to disclose the favorable

fingerprint evidence to him. As defendant argues, because he was charged with home invasion while armed, the State had the burden to prove that he possessed a firearm while entering Collier's apartment. According to defendant, had he known that someone else's fingerprint was on one gun and no identifiable fingerprints were on the other, he could have convincingly argued at trial that the State lacked any physical evidence tying him to the alleged crime.

¶ 22    In response, the State observes that defendant did not raise these arguments regarding counsel's ineffectiveness in the trial court. Although the State did not request, we find that defendant's failure to make these specific arguments below warrants forfeiture on appeal. See *id.* ¶ 22. In the trial court, defendant asserted in his amended motion to withdraw his guilty pleas that counsel was ineffective for failing to have the firearms examined for the victim's fingerprints. Then, at oral argument on the motion, defense counsel again asserted that counsel was ineffective for failing to have the firearms examined for fingerprints. A hearing was conducted where both of defendant's attorneys were questioned regarding the Illinois State Police firearms examination report and their decision not to request more testing be done to determine whether another individual's fingerprints were on the weapons. The argument raised in the trial court is markedly different from asserting that counsel was ineffective for failing to disclose the results of the fingerprint examination to him. As defendant never raised these claims below, we find defendant's claim that counsel was ineffective for failing to disclose or inform him of the fingerprint evidence that was recovered is forfeited. See *id.* ¶ 25.

¶ 23    We now turn to consider defendant's final claim of ineffectiveness of defense counsel related to the guilty pleas. Defendant argues that counsel was ineffective for "failing *to discuss* the trajectory of the bullets with a *bona fide* expert in bullet trajectories" (emphasis added) and broadly that counsel failed to investigate this claim. Once again, this does not comport with the

argument raised in the trial court that counsel was ineffective for failing "*to hire* an expert to examine the trajectory of his bullet wounds." Moreover, defendant never argued below that counsel was ineffective for failing to investigate. Regardless, because these arguments are at least in the same vein as those raised below, we will address the broader claim that counsel was ineffective for failing to investigate whether an expert should be hired to testify regarding the bullet trajectory. See *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65.

¶ 24    We review the trial court's decision to grant or deny a motion to withdraw a guilty plea for an abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). An abuse of discretion will only be found "where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *Id.* A defendant does not have an automatic right to withdraw a guilty plea, but rather must establish a manifest injustice under the facts was involved. *Id.* at 520.

¶ 25    A defendant who pleads guilty waives several constitutional rights, including the right to trial by jury and the right to confront his accusers, and due process of law requires that this waiver be voluntary and knowing. *People v. Williams*, 188 Ill. 2d 365, 370 (1999). "If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and, therefore, is void." *Id.* As stated previously, defendant claims his plea was not knowing and voluntary due to counsel's incompetence.

¶ 26    A challenge to a guilty plea alleging ineffective assistance of counsel is subject to the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hall*, 217 Ill. 2d 324, 334-335 (2005). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that 1) counsel's performance was objectively unreasonable under prevailing professional norms and 2) the deficient performance prejudiced defendant. *People v. Veach*,

2017 IL 120649, ¶ 30. A defendant must satisfy both prongs of the *Strickland* test to raise a successful claim for ineffective assistance of counsel, and failure to satisfy either prong precludes a finding of ineffectiveness. *Id.* For the reasons which follow, we find defense counsel's performance was not objectively unreasonable.

¶ 27    There is a strong presumption that counsel's action or inaction was a matter of trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). Counsel's strategic choices are virtually unchallengeable (*People v. Harris*, 225 Ill. 2d 1, 49 (2007) (citing *Strickland*, 466 U.S. at 690)) and generally are not subject to scrutiny under *Strickland* (*People v. Metcalfe*, 202 Ill. 2d 544, 562 (2002)). "Moreover, a mistake in trial strategy or an error in judgment by defense counsel will not alone render representation constitutionally defective." *People v. Peterson*, 2017 IL 120331, ¶ 80. Counsel's strategic decisions will not support a claim of ineffective assistance of counsel unless counsel's strategy is so unsound that he or she entirely fails to conduct any meaningful adversarial testing of the State's case. *People v. Patterson*, 217 Ill. 2d 407, 441 (2005).

¶ 28    Even in the context of guilty pleas, "counsel's strategic decisions are virtually unchallengeable. [Citation.] Further, the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994). When assessing counsel's performance, a reviewing court is required "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal quotation marks omitted.) *People v. Ramirez*, 2018 IL App (1st) 152125, ¶ 16.

¶ 29    In this instance, defendant maintains counsel was ineffective for failing to investigate his claim that the bullet trajectory supported his theory of defense that he was shot from above by

the victim and did not enter her apartment. Based on our review of the record, we find defense counsel conducted a reasonable investigation of defendant's claims. Silva testified she discussed trial strategy with defendant including consideration of the trajectory of the bullets. Specifically, Silva testified she retained an expert to examine defendant's medical records and spoke with Drs. Sullivan and Orellana to determine if they could testify regarding the bullet trajectory. According to Silva, Dr. Sullivan (defendant's surgeon) indicated he could not testify regarding the trajectory of the bullets and that he would not be able to reconstruct the wounds to determine the trajectory. Dr. Orellana (defendant's emergency room physician) similarly indicated he would be unable testify as to the trajectory of the bullets. Based on this information, namely that the physicians would be unable to reconstruct defendant's injuries in order to conclusively determine the trajectory of the bullets, Silva decided not to investigate further. We further observe that Silva did not testify she would not have pursued this theory of defense. Even without the testimony of the physicians, the record contains a diagram of the location of defendant's wounds and the physicians could have also testified regarding where the bullets entered and exited defendant's body. In addition, Silva obtained defendant's medical records and the record suggests that these records included a CAT scan of defendant's wounds. Accordingly, while Silva did not procure an expert to testify regarding defendant's theory of defense, the failure to do so did not preclude her from so arguing at trial.

¶ 30     Based on this record we cannot say that Silva failed to conduct a reasonable investigation into the bullet trajectory defense. See *People v. Makiel*, 358 Ill. App. 3d 102, 107 (2005) (the general rule that attorneys are required to conduct a reasonable investigation in order for their representation to be considered to be a valid trial strategy); *People v. Kokoraleis*, 159 Ill. 2d 325, 330 (1994) (lack of investigation is to be judged against a standard of reasonableness given all of

the circumstances, applying a heavy measure of deference to counsel's judgments). A general principle is that a counsel's decision about whether to present a particular witness is generally a strategic choice which cannot support a claim of ineffective assistance of counsel. *People v. Richardson*, 189 Ill. 2d 401, 414 (2000). Moreover, the failure to call an expert witness is not *per se* ineffective assistance, even where doing so may have made the defendant's case stronger, because the State could always call its own witness to offer a contrasting opinion. See *People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005). We thus conclude that defendant's ineffective assistance argument fails.

¶ 31 As defendant cannot establish ineffective assistance of counsel, he cannot demonstrate the required manifest injustice necessary to withdraw his guilty plea. See *Delvillar*, 235 Ill. 2d at 520. The trial court did not abuse its discretion in denying defendant's guilty plea. We affirm the trial court's judgment.

¶ 32                                        CONCLUSION

¶ 33 For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

¶ 34 Affirmed.